**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
THE PRUDENTIAL INSURANCE COMPANY
OF AMERICA,

                     Plaintiff,                 **MEMORANDUM OF**
                                              **DECISION AND ORDER**

               -against-                  07-CV-1080 (ADS)(MLO)

NEIL DUKOFF and ESTATE OF SHARI
DUKOFF,

                    Defendants.
--------------------------------------------------------X
**APPEARANCES:**

**d'Arcambal, Levine & Ousley, LLP**
*Attorneys for the plaintiff*
40 Fulton Street
Suite 1005
New York, NY 10038
           By:    Michelle J. d'Arcambal, Esq., Of Counsel
                  Jodie L. Ousley, Esq., Of Counsel


**Gisonni & Harms, LLP**
*Attorneys for the defendants*
20 Crossways Park North
Suite 412
Woodbury, NY 11797
           By:    Eve-Lynn Gisonni, Esq., Of Counsel

**SPATT, District Judge.**

       Plaintiff Prudential Insurance Company of America ("Prudential") brought

suit to void a life insurance policy it issued on the life of decedent Shari Dukoff for

which her husband, Neil Dukoff, was the beneficiary. Prudential contends that the

policy was obtained by fraud and is void.  The defendants counterclaimed for the full

value of the life insurance policy, $500,000, plus interest.  After discovery, both

parties moved for summary judgment.  For the reasons set forth herein, the Court denies both motions in their entirety.

## I. BACKGROUND

Defendant Neil Dukoff was and is a member of the American Institute of Certified Public Accountants ("AICPA").  In 2004, AICPA and Prudential had entered into a group insurance contract through which AICPA members could obtain life insurance on the lives of their dependents.  Pursuant to this arrangement, an application was filed electronically with Prudential in the spring of 2004 for dependant life insurance on the life of Shari Dukoff, Neil Dukoff's wife.  The application requested that Shari Dukoff describe any negative medical history she had within the past five years, including surgery or symptoms of cancer.  The applicant affirmed that Shari Dukoff had none.  Based on this application, Prudential issued a Certificate of Coverage on Shari Dukoff's life for $500,000, naming Neil Dukoff as the beneficiary.  The policy was dated and commenced on June 1, 2004, and the Dukoffs then paid all premiums due.

On May 23, 2006, Ms. Dukoff died from complications stemming from cancer.  On June 8, 2006, Mr. Dukoff submitted a claim form to Prudential, and on September 20, 2006, Prudential sent him a letter approving the claim.  However, on September 26, 2006, before the claim was paid, Prudential informed Mr. Dukoff by letter that it was denying the claim based on material misrepresentations made in the application for insurance.

The parties' primary factual disagreement concerns the submission of the application for life insurance.  Both agree the application was completed and submitted through the internet, without a handwritten signature.  The defendants state that Ms. Dukoff completed the application sometime in March or April of 2004, while Prudential claims the application was submitted on May 15, 2004, a day after Ms. Dukoff underwent surgery to remove a cancerous tumor.  Prudential also asserts that Ms. Dukoff did not submit the application.  The parties agree as to the content of the insurance application and contract, but they disagree as to their respective meanings.

On March 13, 2007, Prudential filed the present action in the District Court for the Eastern District of New York, alleging fraudulent procurement of life insurance; rescission based on material misrepresentations; and unjust enrichment. Prudential seeks to void the Certificate of Coverage on the policy and to revoke Mr. Dukoff's ownership interest therein.  On May 2, 2007, the defendants answered and counterclaimed, seeking full payment on the insurance policy.  On March 16, 2008, after the close of discovery, both parties moved for summary judgment on all of the plaintiff's claims and on the defendants' counterclaim.

The plaintiff seeks summary judgment on two grounds: first, the plaintiff maintains that the insurance contract is void *ab initio* because it is purportedly a contract between Prudential and Neil Dukoff, yet Neil Dukoff is not the person who submitted the application for insurance.  Second, the plaintiff argues that Shari

Dukoff's medical records demonstrate that there are materially false statements regarding her health on the application for insurance.

The defendants dispute both of these contentions, and further argue that they are entitled to summary judgment because (1) the plaintiff did not contest the validity of the insurance policy within the contractually agreed-to period, (2) the statements made in the application for insurance cannot be used to rescind the contract because the application failed to comply with electronic signature and electronic records laws, and (3) the plaintiff waived its right to contest the contract by initially approving Mr. Dukoff's claim and by failing to timely return the premiums paid on the contract. These contentions are disputed by the plaintiff.

## II. DISCUSSION

### A. Summary Judgment Standard

It is well-settled that summary judgment under Fed. R. Civ. P. 56(c) is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is "material" within the meaning of Fed. R. Civ. P. 56 when its resolution "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).   An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.   In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits,

interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir.1995) (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962) (per curiam), and Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir. 1989)).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)).  However, the nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party.  Matsushita, 475 U.S. at 586.  Summary judgment is appropriate when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case."  Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citations omitted).

Here, as both parties are moving for summary judgment, the Court takes the evidence and pleadings in the best light for the defendants when ruling on the plaintiff's motion for summary judgment, and in the best light for the plaintiff when ruling on the defendants' motion.

**B. The Plaintiff's Motion for Summary Judgment**

  **1. As to the Plaintiff's Contention that the Insurance Contract was Not Validly Formed**

The plaintiff's first contention in support of its motion for summary judgment is that there is no valid contract for insurance between Prudential and Mr. Dukoff because he was not the person who submitted the application for insurance. The plaintiff argues that Mr. Dukoff's failure to submit the application demonstrates that there was no "meeting of the minds" between Mr. Dukoff and Prudential, thus obviating the contract. The defendants do not directly contravene this argument, but rather assert that the insurance contract was with Shari Dukoff, who they claim did submit the application, rather than Neil Dukoff, who did not.

As a preliminary matter, the Court finds there is a genuine issue of material fact as to who submitted the application for insurance. Prudential has produced a computer printout showing that the application was submitted on May 15, 2004, a date on which the parties agree Ms. Dukoff was in the hospital recovering from surgery. This evidence suggests that Ms. Dukoff did not submit the application. However, the plaintiff has not offered sufficient evidence to prove that the printout accurately reflects the date of submission. Moreover, Mr. Dukoff has stated under oath that Ms. Dukoff applied for the insurance in March or April of 2004. There is thus a genuine issue of fact as to whether Ms. Dukoff submitted the insurance application and as to the date of submission.

In addition, the Court finds there is a genuine issue of material fact as to whether Neil Dukoff or Shari Dukoff—or both—was or were the intended party or

parties to the contract with Prudential.  Prudential argues that the application for insurance required Neil Dukoff to submit it, and that he is therefore the intended counterparty to Prudential.  But in at least one section of the application, the applicant states that "I" authorize Prudential to access "my" medical records to determine eligibility for insurance.  (Gisonni Aff. at Ex. C.)  This suggests that it was Shari Dukoff who was to submit the application, since there would be no need to release Neil Dukoff's records, because Neil Dukoff's life was not being insured.

The Certificate of Coverage Prudential sent to the Dukoffs does not help to clarify the issue, as both Shari Dukoff's and Neil Dukoff's name appears on its face, and neither is identified as the party to the contract.  Moreover, with respect to the person the law usually views as a party to an insurance contract, the plaintiff itself asserts that:

> There can be no doubt in New York that the person whom an insurance company intends to make a contract with and intends to insure, is the person who fills out the application, provides the requested medical information, and presents him/herself for a physical examination (if applicable).

(Pl's. Mem. in Supp. Mot. Summ. J. at 14 (citing Maslin v. Columbian Nat. Life Ins. Co., 3 F.Supp. 368, 370 (2d Cir. 1932)).)  Taking the pleadings and the evidence in the best light for the defendants, the Court finds there is a genuine issue of fact as to who the intended party or parties to the contract was or were.

In addition, to the extent the insurance contract was intended to be between Mr. Dukoff and Prudential, there is also a question of fact as to whether Ms. Dukoff had apparent authority to complete the application as Mr. Dukoff's agent, allowing

Mr. Dukoff to later ratify it.  See, e.g., RLI Ins. Co. v. Athan Contracting Corp., ---
F.Supp.2d ---, 2009 WL 3212737, *5 (E.D.N.Y. 2009) ("[R]atification occurs when a
principal, having knowledge of the material facts in a transaction, evidences an
intention to affirm or adopt the transaction of his agent through his acts or words."
(internal citations omitted)).  The Court thus finds that there are genuine issues of
material fact with respect to the plaintiff's contention that the insurance contract was
not validly formed.  Accordingly, the application for summary judgment in this
regard is denied.

### 2. As to the Plaintiff's Contention that the Contract was Procured by Fraud

The plaintiff's second argument is that the application for life insurance
includes material misstatements concerning Ms. Dukoff's medical history, and that,
therefore, the insurance contract should be rescinded because it was procured by
fraud.  The plaintiff maintains that even if Ms. Dukoff submitted the application for
insurance before she was hospitalized in May 2004, she nonetheless misrepresented
her medical history by failing to disclose, among other things, the fact that she had
multiple sclerosis and had undergone surgery in 2001 to remove a cancerous tumor.
The plaintiff seeks to substantiate these claims through submission of Ms. Dukoff's
medical records.  The defendants dispute the admissibility of these medical records.

The Court finds that it need not address whether material false statements
were in fact made in the application or whether the medical records are admissible.  A
separate issue precludes summary judgment in favor of the plaintiff.  Namely, the
Court finds that there is a genuine issue of material fact with respect to whether

Prudential challenged the validity of the insurance policy within the contractually required period.

There is no disagreement that the stated effective date for the insurance policy was June 1, 2004, and that the earliest date that Prudential challenged the policy, by any definition of "challenge", was September 26, 2006, more than two years after its effective date.  The parties further agree that the contract—with debated exceptions— provides that Prudential may use statements made in the application to challenge the policy only within two years of its effective date.  However, the plaintiff claims that the terms of the insurance contract allows it to use these statements to challenge the contract after the two year period has run, *provided that* Ms. Dukoff died within that two year period.  The defendants disagree.  The relevant provision appears in both the Group Insurance Contract and the Certificate of Insurance, and states in pertinent part:

> Incontestability of Dependents Life Insurance
>
> This limits Prudential's use of a Participant's statements in contesting an amount of Dependents Life Insurance for which the Participant is insured with respect to a dependent.  These are statements made to persuade Prudential to accept you for insurance.
>
> They will be considered to be made to the best of your knowledge and belief.  These rules apply to each statement:
>
> (1) It will not be used in the contest unless:
>
>> (a) it is in a written instrument signed by the Participant; and
>>
>> (b) A copy of that instrument is or has been furnished to the Participant or the Participant's Beneficiary.

9

> (2) If it relates to the dependents [sic] insurability, it will not be
> used to contest the validity of Dependents Life Insurance which
> has been in force, before the contest, for at least two years during
> the Participant's lifetime.

(Angle Aff. at Ex. A.)  "Participant" is not expressly defined in the agreement, but

"Participant Insurance" is defined as "Insurance under a Coverage pertaining to the

person of a Participant," and "Dependents Insurance" is defined as "Insurance on the

person of a dependent."   "You" and "your" are undefined.

Under New York law, when the terms of a contract are unambiguous, they

will be determinative as to the parties' agreement.  Postlewaite v. McGraw-Hill, Inc.,

411 F.3d 63, 67 (2d Cir.2005).  However, here the Court finds the contractual

language to be ambiguous.  First, the term "Participant" is not clearly defined.  To be

sure, the definitions of Participant Insurance and Dependent Insurance suggest that

"Participant" refers to Neil Dukoff, the member of AICPA, and "Dependent" refers to

Shari Dukoff, his dependant.  However, the contract later provides that "[Participant's

statements] are statements made to persuade Prudential to accept you for insurance,"

and "[t]hey will be considered to be made to the best of your knowledge and belief."

(Angle Aff. at Ex. A.)  This, by contrast, suggests that "Participant" refers to Shari

Dukoff, since she is the person who is to be accepted for insurance.  Similarly, the

contract provides:

> If it [a statement by Participant] relates to the dependents [sic]
> insurability, it will not be used to contest the validity of
> Dependents Life Insurance which has been in force, before the
> contest, for at least two years during the Participant's lifetime.

(Angle Aff. at Ex. A.)  Here, "Participant" and "dependant" appear in the same sentence, suggesting that the former refers to Neil and the latter to Shari Dukoff.  Yet, if "Participant" refers to Neil Dukoff, then the contract appears to provide that the statements made by *him* will not be used to contest the policy on Shari Dukoff's life after the policy has been in force for two years during *his* lifetime.  However, even if this interpretation is correct, it is unclear whether the policy could be said to be "in force" after Ms. Dukoff had died, and thus Prudential may still be entitled to use the statements against the Dukoffs if she died within the two year period.  On the other hand, if "Participant" refers to Shari Dukoff, then the contract provides that statements made by *her* regarding *her* health may be used to challenge the policy after the two year period has run, provided *she* died within the period.

The Court in its own anecdotal experience has noticed that, all too often, insurance policies contain language that is confusing not only to consumers, but even to experienced attorneys.  This appears to be one of those cases.  The Court finds the language in the Group Insurance Contract to be ambiguous, and therefore must look to extrinsic evidence to determine its meaning.  McCostis v. Home Ins. Co. of Indiana, 31 F.3d 110, 113 (2d Cir. 1994) ("When faced with ambiguity in an insurance policy, a reviewing court should consider extrinsic evidence submitted by the parties to assist in determining their actual intent.").  Here, the parties have provided little extrinsic evidence of their intent.  Indeed, the primary "evidence" presented is New York Insurance Law § 3220, which provides in pertinent part:

> (a) No policy of group life insurance shall be delivered or issued
> for delivery in this state unless it contains in substance the

11

following provisions or provisions which in the opinion of the superintendent are more favorable to certificate holders or not less favorable to certificate holders and more favorable to policyholders:

> (1) That the policy is incontestable after two years from its date of issue . . . and that no statement made by any person insured under the policy relating to his insurability shall be used in contesting the validity of the insurance with respect to which such statement was made after such insurance has been in force prior to the contest for a period of two years during such person's lifetime. . . .

Prudential maintains that the parties intended to draft the contract to conform to the language in subparagraph (1) of Section 3220, and that the Group Insurance Contract thus provides that the relevant statements may be used to challenge the contract's validity within two years of the lifetime of *the insured*, Ms. Dukoff.  The defendants, on the other hand, disagree and contend that, pursuant to Section 3220, the parties elected to include a term that is "more favorable to the certificate holders" than the language in subparagraph (1).

Lacking additional evidence as to the parties' intent, and taking what evidence there is in the best light for the non-moving party—here, the defendants—the Court finds that there is a genuine issue of material fact as to the meaning of this contractual term.  Therefore, because the contract term may in fact bar the use of the statements on which Prudential's fraud claim is based, Prudential is not entitled to summary judgment based on this argument.

Thus finding none of the plaintiff's arguments for summary judgment persuasive, the Court thus denies the plaintiff's motion for summary judgment in its entirety.

## C. The Defendants' Motion for Summary Judgment

The defendants assert several bases for summary judgment, all of which they maintain support enforcement of the insurance policy on Shari Dukoff's life.  In opposition, the plaintiff contends that none of these bases merit summary judgment on the defendants' affirmative claim for relief, because they all rely on the existence of a contract between Prudential and Mr. Dukoff.  As discussed above, Prudential asserts that no such contract was ever entered into.  The Court has already found that the plaintiff is not entitled to summary judgment in its own favor based on this argument, but has not determined whether the argument is nonetheless sufficiently meritorious to preclude summary judgment in the defendants' favor on their claims for relief.  The Court finds this to be a close issue, and decides that it need not rule on the question, as the defendants' motion for summary judgment fails in its entirety for other reasons.

### 1. As to the Defendants' Contention that the Group Insurance Contract Bars the Use of Ms. Dukoff's Statements to Contest its Validity

The defendants assert that Prudential is contractually time barred from using statements made in the application for insurance to challenge the validity of the insurance policy, and that Prudential therefore has no valid claim based on fraud so as to rescind the contract.  The defendants also assert that, even if Prudential may use statements made in the application in its challenge, it has not submitted admissible medical records to show that material misstatements were made.  The defendants argue that the insurance contract is therefore valid on its face, and that Prudential must honor it.

The Court disagrees.  As discussed above, there is a genuine issue of fact as to whether the parties' contract time bars Prudential from using insurance application statements to challenge the validity of the contract.  Similarly, as discussed above, there is a genuine issue of fact as to whether Ms. Dukoff was recovering from surgery for cancer when the application for insurance was submitted.  If she was, the application plainly contains material misstatements concerning her health, regardless of the admissibility of her medical records.  Taking the evidence in the best light for the non-moving party—now, the plaintiff—the Court finds for the reasons set forth above that there are genuine issues of material fact that preclude summary judgment on these bases.

## 2. As to the Defendants' Contentions Regarding the Electronic Signature Law

The defendants argue that the plaintiff is further barred from using Ms. Dukoff's statements to challenge the validity of the insurance contract because the statements weren't obtained in a "written instrument" signed by Ms. Dukoff.  In support of this contention, the defendants cite both to the Group Insurance Contract and to Section 3220, which provide, respectively:

It [a statement by Participant] will not be used in the contest unless:

(a) it is in a written instrument signed by the Participant . . .

(Angle Aff. at Ex. A.) and:

[N]o statement made by any person insured under [a group insurance] policy relating to his insurability shall be used in contesting the validity of the insurance with respect to which such

> statement was made . . . unless it is in a written instrument signed
> by him. . . .

N.Y. Ins. L. § 3220(a)(1).

The parties agree that no physical signature was obtained from either Shari or Neil Dukoff in connection with the application. The plaintiff asserts, however, that pursuant to the New York Electronic Signatures and Records Act ("ESRA"), the electronic submission of the Dukoffs' application for insurance satisfied the contractual and statutory requirement for a signature. ESRA provides in pertinent part:

> [A]n electronic signature may be used by a person in lieu of a
> signature affixed by hand. The use of an electronic signature shall
> have the same validity and effect as the use of a signature affixed
> by hand.

N.Y. Tech. L. § 304, and:

> "Electronic signature" shall mean an electronic sound, symbol, or
> process, attached to or logically associated with an electronic
> record and executed or adopted by a person with the intent to sign
> the record.

N.Y. Tech. L. § 302. In 2002, the New York State legislature amended ESRA, eliminating the previous requirement that an "electronic signature" include an:

> identifier, including without limitation a digital signature, which is
> unique to the person using it, capable of verification, under the sole
> control of the person using it, attached to or associated with data in
> such a manner that authenticates the attachment of the signature to
> particular data and the integrity of the data transmitted, and
> intended by the party using it to have the same force and effect as
> the use of a signature affixed by hand.

N.Y. Tech. L. § 102 (amended 2002, renumbered 2004). No such "identifier" is now required.

15

Here, the application was submitted through a standard internet click-through process, whereby the applicant clicked on a button submitting the application to Prudential electronically.  The final internet page the applicant saw before submitting the application to Prudential contained the following text:

> * I agree By submitting this form, I hereby request coverage under the CPA Spouse Life Insurance Plan.  I have read the Conditions Applicable to This Subscription on this web site and agree to those statements and conditions.  I also hereby subscribe to the AICPA Insurance Trust in accordance with Member's Subscription and agree to the applicable conditions.

(Gisonni Aff. at Ex. C (emphasis in original).)  Before arriving at this page, the applicant must input his or her personal information, including his or her address and social security number.  The plaintiff asserts that this process satisfied the requirement that the document be "signed."

The Court is unaware of any other court that has addressed the validity under ESRA of electronic signatures for insurance documents, although courts applying New York law have generally held that, under ESRA, an electronic signature is a valid signature.  See On Line Power Technologies, Inc. v. Square D Co., No. 03 Civ. 4860(CM), 03 Civ. 4865(CM), 2004 WL 1171405, *9 (S.D.N.Y. Apr. 20, 2004); Stephenson v. Food Bank for New York City, 21 Misc.3d 1132(A), 875 N.Y.S.2d 824 (N.Y.Sup. 2008).  In support of their argument that the electronic signature on the application is insufficient, the defendants point to two opinions by the Office of General Counsel for the State of New York Insurance Department.  The first opinion, issued October 14, 2003, states in pertinent part:

> Question Presented: Does the New York State Insurance
> Department have any rules that an insurance company doing
> business in New York must adhere to regarding its use of
> electronic signatures on electronic documents used in its electronic
> claims operations?
>
> Conclusion:  No. However, in implementing electronic signature
> technology an insurance company doing business in New York
> must assure that the business processes it adopts in connection with
> its use of electronic signatures must render the company in
> compliance with all applicable provisions of the New York
> Insurance Law and regulations.

Op. N.Y. Ins. Dep. (Oct. 14, 2003) (available online at http://www.ins.state.ny.us/

ogco2003/rg031005.htm).  The second opinion, issued September 16, 2005, states in

pertinent part:

> Questions Presented: 1) As to an insurance applicant who utilizes
> the Internet to obtain insurance coverage, is his or her electronic
> check mark on a box on an on-line insurance application, broker
> service fee agreement, or affidavit a legally valid electronic
> signature in New York?
>
> Conclusions: 1) Generally speaking, a checked box on an
> electronic form on the Internet constitutes a valid electronic
> signature in New York if the "electronic … symbol or process [is]
> attached to or logically associated with [the] electronic record and
> executed or adopted by a person with the intent to sign the record,"
> N.Y. State Tech. Law § 302(3) (McKinney Supp. 2005), provided
> that the insurer, agent or broker using such technology to transact
> business is capable of verifying that the person providing the
> electronic signature is actually the party to be charged. Without
> such verification measure in place, the Department would not
> consider a checked box to be a valid signature.

Op. N.Y. Ins. Dep. (Sept. 16, 2005) (available online at http://www.ins.state.ny.us/

ogco2005/rg050927.htm).  The defendants maintain that these opinions are binding

on the Court, and cite to Medical Society of State v. Serio, 100 N.Y.2d 854, 864, 768

N.Y.S.2d 423 (N.Y. 2003) for the proposition that "the Superintendent's

interpretation [of a statute], if not irrational or unreasonable, will be upheld in deference to his special competence and expertise with respect to the insurance industry, unless it runs counter to the clear wording of a statutory provision." Id. (internal quotations omitted).  The defendants argue that, pursuant to the Insurance Department's interpretation of the law, the electronic signature on their application did not satisfy the requirement that the document be "signed" because Prudential did not have a method of verifying who was providing the electronic signature.  The defendants contend that, because this requirement was not satisfied, the plaintiff may not use the defendants' statements to challenge the validity of the contract.

The Court notes at the outset that Serio was concerned with deference to formal regulations promulgated by the Insurance Department, and that there is no clear indication that opinions by the Insurance Department are due similar deference. Id.  The Court also notes that the 2005 Insurance Department opinion provides little support for the conclusion that ESRA requires an insurance company to positively identify who is signing an insurance document.  To the contrary, in 2002 when the legislature amended the ESRA provision defining the requirements for an "electronic signature", it explicitly *removed* the requirement that an electronic signature identify the person signing.  N.Y. Tech. L. § 102 (amended 2002, renumbered 2004).  Further, the 2005 opinion appears to address the general enforceability of an insurance contract that is signed electronically.  Here, the issue is different: the defendants do not claim that the contract is unenforceable, but rather claim that Prudential may not use the Dukoffs' statements to invalidate their insurance contract.

Nevertheless, in deference to the Insurance Department, the Court finds that Prudential may use statements made in the insurance application to challenge the insurance contract's validity only if Prudential could reasonably identify the person who made them.  Op. N.Y. Ins. Dep. (Sept. 16, 2005).  Here, it is at least possible that Prudential satisfied this requirement.  While it is true that the final page of the application does not require identifying information, the applicant nonetheless transmits important identifying information to Prudential—including his or her address, social security number, and physical description—when he or she submits the application.  As such, the Court finds that there is at least a triable issue of fact as to whether this is sufficient to satisfy the requirements set forth in the Insurance Department's opinion letter.  The defendants are therefore not entitled to summary judgment based on the argument that the lack of a valid signature on the insurance application bars the plaintiff's challenge to it.

### 3. As to the Defendants' Contentions Concerning the Electronic Records Law

The defendants similarly maintain that the statements made in the application for insurance cannot be used to challenge the policy because Prudential did not comply with federal requirements for the use of electronic records.  The defendants contend that the Electronic Signatures in Global and National Commerce Act ("ESIGN"), 15 U.S.C.A. § 7001, requires that Prudential should have included several additional disclosures in the on-line application for its electronic signature to have been valid.

This contention by the defendants is without merit.  The provision to which the defendants cite, Section 1007(c), relates solely to the use of electronic *records*, and not to the use of electronic *signatures*.  Section 1007(c) requires companies to make certain disclosures to consumers before providing important records in electronic, rather than print, form.  Here, there is no allegation that the plaintiff provided the defendants with any records in electronic form.  To the contrary, the parties agree that Prudential sent the Dukoffs hard copies of both the Certificate of Insurance and their application.  Summary judgment based on the contention that Prudential failed to conform to federal electronic records laws is denied.

### 4. As to the Defendants' Contention that the Plaintiff Waived its Right to Contest the Insurance Contract

The defendants further assert that they are entitled to summary judgment because the plaintiff waived its right to contest the validity of the insurance contract. The defendants assert that, by initially informing Mr. Dukoff by letter that his claim had been approved, Prudential waived its right to later deny the claim.

As a preliminary matter, the Court finds that Prudential did inform Mr. Dukoff on September 20, 2006 that his claim had been approved.  While the plaintiff contests this, its own submissions include a letter to Neil Dukoff dated September 20, 2006 that states "[w]e have approved your group life insurance claim."  (Angle Aff. at Ex. C, P007.)  Mr. Dukoff confirms that he received this letter.  (Dukoff Aff. ¶ 16.)

However, the parties agree that the applicable law provides that an insurance company will not be deemed to have waived its right to challenge a policy unless it makes that waiver with full knowledge of the possible bases for challenge.  See Boro

Precision Products Corp. v. John Hancock Mut. Life Ins. Co., 223 F.Supp. 584, 588 (2d Cir. 1963).  Here, the defendants assert that the plaintiff had full knowledge of any potential basis for challenging the policy when it approved Mr. Dukoff's claim. On the other hand, the plaintiff claims that it did not complete its investigation of the claim until immediately before it informed Mr. Dukoff that his claim was rejected.

The defendants, who have the burden on their motion for summary judgment, support their argument by citing to Mr. Dukoff's release in June 2006 of Ms. Dukoff's medical records and doctors' names.  (Gisonni Aff. at Ex. H.)  They argue that this shows that Prudential had knowledge of the basis for any denial of claims when, three months later, Prudential initially approved Mr. Dukoff's claim.  Taking the evidence in the best light for the plaintiff, the Court finds that this evidence is not sufficient to show that Prudential had knowledge of the bases for contesting Ms. Dukoff's claim on September 20, 2006.  As such, there is a genuine issue of material fact for trial, and the defendants are not entitled to summary judgment on the grounds that Prudential waived its right to challenge the insurance policy.

### 5. As to the Defendants' Contention that Prudential's Delay in Returning Insurance Premiums Bars Recission of the Contract

The defendants additionally urge that they are entitled to summary judgment because the plaintiff waited until March 2007 to return the insurance premiums tendered by Mr. Dukoff, despite having informed him in September 2006 that his claim was denied.  This argument is unavailing.

Under New York law, an insurer seeking to rescind a contract based on fraud need not return premiums to the insured until the claim goes to trial.  See Berger v.

Manhattan Life Ins. Co., 805 F.Supp. 1097, 1110 (S.D.N.Y. 1992) ("[W]here an insurer declares an executed rescission, sues to rescind the contract for fraud or on other grounds, or makes an affirmative demand for rescission in defense of a suit, equity requires that the insurance company tender back the premium prior to trial, or at the time of trial if the insurer acquires knowledge of the ground for rescission after the insured's death.").  Prudential tendered the premiums in March 2007, thus satisfying this requirement.

The defendants nonetheless cite to Scalia v. Equitable Life Assur. Soc. of U.S., 251 A.D.2d 315, 673 N.Y.S.2d 730 (2d Dep't 1998), Continental Ins. Co. v. Helmsley Enterprises, Inc., 211 A.D.2d 589, 622 N.Y.S.2d 20 (1st Dep't 1995), and D'Onofrio v. Safeco Ins. Co. of America, 70 A.D.2d 945, 417 N.Y.S.2d 778 (2d Dep't 1979), in support of their argument that Prudential lost its right to challenge the policy by failing to return premiums.  All these cases are inapplicable.  Each of the cases cited deals with an insurer who continued to accept premiums from an insured despite knowledge of a basis for rescinding the relevant insurance contract.  There is no allegation here that any premiums were paid to Prudential after Ms. Dukoff died, or that Prudential had knowledge of a basis for rescinding the contract before her death.  The Court thus finds that the timing of Prudential's return of the premium payments is not a basis for summary judgment.

**6. As to the Defendants' Contention that the Plaintiff has not Stated a Claim for Unjust Enrichment**

The defendants also move separately for summary judgment on the plaintiff's claim for unjust enrichment.  The defendants contend that the claim is unripe, as

Prudential has not yet made any payment to Mr. Dukoff.  The plaintiff maintains that the claim is ripe, because Mr. Dukoff was unjustly enriched by his improperly procured property interest in the Certificate of Coverage.

The parties agree that a party is unjustly enriched when that party "holds property that he should not."  (Defs.' Mem. in Supp. Mot. Summ. J at 25 (citing Simonds v. Simonds, 45 N.Y.2d 233, 242, 408 N.Y.S.2d 359 (N.Y. 1978)); Pl.'s Resp. at 25.)  The operative question is therefore whether Mr. Dukoff has a property interest in the insurance policy on Ms. Dukoff's life.  If he does, then the plaintiff's claim for unjust enrichment is ripe.

While the Court is not aware of other courts that have addressed this question under New York law in this context, courts have held that a party may hold a property interest in an insurance policy in the context of matrimonial law.  See, e.g., Marra v. Marra, 279 N.Y.S.2d 1012, 1013 (N.Y.Sup. 1967) ("A named beneficiary can, of course, acquire a property interest in a life insurance policy.")  The Court thus finds that Mr. Dukoff does have a property interest in the insurance policy, and therefore denies the defendants' motion for summary judgment with regard to the plaintiff's claim for unjust enrichment.

Finding none of the defendants' arguments in favor of summary judgment persuasive, the Court denies the defendants' motion for summary judgment in its entirety.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the plaintiff's motion for summary judgment is DENIED in its entirety, and it is further

**ORDERED** that the defendants' motion for summary judgment is DENIED in its entirety, and it is further

**ORDERED** that the parties are directed to appear for a pre-trial conference on January 5, 2010 at 9:00 a.m.

**SO ORDERED.**

Dated: Central Islip, New York
December 18, 2009

     ___/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge